**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 3, 2021

LETTER TO COUNSEL

   RE: *Hinton v. Saul, Commissioner, Social Security Administration*
      Civil No. 1:20-cv-01503-JMC

Dear Counsel:

  On June 5, 2020, Plaintiff Hinton petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claims for Period of Disability and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment and Plaintiff's Response. (ECF Nos. 16, 17, & 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

  Plaintiff filed his claim for period of disability and disability insurance benefits on September 12, 2016. (Tr. 15). Plaintiff alleged an onset date of December 20, 2014. *Id.* Plaintiff's claims were denied initially on January 25, 2017 and again on reconsideration on May 17, 2017. (Tr. 73–83; 84–95). A hearing was held on November 28, 2018, before Administrative Law Judge H. Munday ("ALJ"). (Tr. 35–72). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 27). The Appeals Council declined review (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

  In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite

1

showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In the instant case, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since December 20, 2014, the alleged onset date." (Tr. 17). The ALJ further found that during the relevant time frame, Plaintiff suffered from the severe impairments of "spine disorder, post laminectomy syndrome, adhesive capsulitis of the left shoulder, and obesity." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 C.F.R. 404.1567(a) except occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; never crawl or climb ladders, ropes, and scaffolds; occasional reach overhead with left upper extremity; frequent handling with left upper extremity; occasional exposure to vibrations; occasional exposure to hazardous conditions, including unprotected heights and moving machinery; and uses a cane to ambulate.

(Tr. 18).

The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 26). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 27).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. (ECF No. 16-2 at 5). More precisely, Plaintiff argues that (1) the ALJ erred by failing to properly evaluate whether Plaintiff's impairments met or equaled Listing 1.04A; and (2) the ALJ failed to follow the "special technique" set out in 20 C.F.R. § 404.1520a; and the ALJ's step five determination that Plaintiff could perform other work is not supported by substantial evidence. *Id.* at 9; 20; 28.

I agree, and find that the ALJ's opinion is not supported by substantial evidence. Therefore, I will deny both motions and remand the case for further analysis. In remanding for additional

explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## **ANALYSIS**

**Listing 1.04A**

Plaintiff argues that the ALJ's step two determination—"that Plaintiff suffers from 'spine disorder [and] post laminectomy syndrome'"—and the existence of "ample evidence" in the record warranted identification and a full analysis of Listing 1.04 at step[]three. (ECF No. 16-2 at 11). Yet, Plaintiff suggests that the ALJ's "rationale for disposing of Listing 1.04A was cursory, factually inaccurate, inherently contradictory, and did not involve a comparison of each of the listed criteria to the medical evidence of record." *Id.*

Defendant responds that "any error on the ALJ's part is harmless where [Plaintiff's] argument misapprehends the evidence of record and fails to establish that [Plaintiff] meets the requirements" of Listing 1.04A. (ECF No. 17-1 at 5). In support, Defendant argues that while the record contains evidence of positive straight leg raise tests, "none of the straight leg raise testing results . . . document the position in which testing was performed and they therefore do not establish that [Plaintiff] has met the requirement to document positive testing in both the sitting and supine position." *Id.* at 6. In short, Defendant avers that Plaintiff failed to meet his burden of establishing that his impairments meet or equal Listing 1.04A. *Id.*

The Listings of Impairments "describe[] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity. . . ." 20 C.F.R. § 404.1525(a). At step three of the five-step sequential evaluation, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). To meet Listing 1.04, a claimant must have a disorder of the spine, resulting in compromise of a nerve root, with either: (A) evidence of nerve root compression;[1] (B) spinal arachnoiditis; or (C) lumbar spinal stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Each subsection also delineates symptoms for establishing the severity requirement. *Id.*

In *Radford v. Colvin*, the Fourth Circuit rejected the contention of the SSA that Listing 1.04A necessitated that the requisite symptoms be present simultaneously or in close proximity:

> Listing 1.04A requires a claimant to show only . . . that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months. 20 C.F.R. § 404.1509. A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his

---

[1] In full, Subsection 1.04A requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.

> condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity.

734 F.3d 288, 294 (4th Cir. 2013). In response to *Radford*, the SSA issued Acquiescence Ruling ("AR") 15-1(4),[2] which sets forth a two-step test for the application of Listing 1.04A and is applicable to states within this Circuit. *See Beck v. Saul*, 2019 WL 3423649, at *5 (E.D.N.C. July 3, 2019), *report and recommendation adopted*, 2019 WL 3423424 (E.D.N.C. July 26, 2019). This application is as follows:

> Adjudicators will decide whether the evidence shows that all of the medical criteria in paragraph A are present within a continuous 12-month period (or, if there is less than 12 months of evidence in the record, that all the medical criteria are present and are expected to continue to be present). If all of the medical criteria are not present within a continuous 12-month period, adjudicators will determine that the disorder of the spine did not meet the listing.
>
> If all of the medical criteria in paragraph A are present within a continuous 12-month period (or are expected to be present), adjudicators will then determine whether the evidence shows—as a whole—that the claimant's disorder of the spine caused, or is expected to cause, nerve root compression continuously for at least 12 months. In considering the severity of the nerve root compression, the medical criteria in paragraph A need not all be present simultaneously, nor in particularly close proximity. The nerve root compression must be severe enough, however, that the adjudicator can fairly conclude that it is still characterized by all of the medical criteria in paragraph A.

AR 15-1(4), 80 Fed. Reg. at 57420, 2015 WL 5564523.

In the instant case, the ALJ's written decision explicitly addressed Listing 1.04. With regard to that listing specifically, the ALJ provided:

> The claimant's back disorder does not meet or equal the requirements of listing 1.04 under AR 15-1(4). The listing requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or evidence of spinal arachnoiditis; or evidence of lumbar spinal stenosis resulting in pseudoclaudication. The record shows positive straight leg raise tests and some findings of reduced spinal range of motion and lower extremity sensation; however, the claimant retained normal reflexes and strength. The record shows no evidence of spinal arachnoiditis. The claimant was able to walk without the use of assistive devices occupying both upper extremities.

---

[2] "When [the SSA] determine[s] that a United States Court of Appeals holding conflicts with [the SSA's] interpretation of a provision of the Social Security Act or regulations and the Government does not seek further judicial review or is unsuccessful on further review, [the SSA] will issue a Social Security Acquiescence Ruling." 20 C.F.R. § 404.985.

(Tr. 18).

It is clear that the ALJ believed there to be ample evidence to identify and discuss each subsection of Listing 1.04, including Listing 1.04A. However, as to Listing 1.04A, some of the ALJ's factual assertions—namely, that Plaintiff retained normal reflexes and strength—are inaccurate. Plaintiff points to specific record evidence of positive straight-leg raising tests, and both motor loss and sensory or reflex loss. *See* (ECF Nos. 16-2 at 16–18; 18 at 5) (citing Tr. 375, 462, 465, 492, 516, 522, 524, 530, 536, 549, 554, 559, 565–66, 568, 571, 585, 590, 602–03, 684–86). Defendant's argument to this Court for why the ALJ's conclusion that Listing 1.04A is not met hinges on whether the positive straight-leg raising tests were conducted in the sitting and supine positions. (ECF No. 17-1 at 5-6). This argument must fail. Such explanation does not appear in the ALJ's narrative discussion, and it would be error for this Court to "engage[] in an analysis that the ALJ should have done in the first instance." *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Instead, since the ALJ simply and erroneously asserted an absence of evidence instead of explaining his evaluation of the existing evidence, I am unable to review the ALJ's opinion to determine whether that conclusion is adequately supported. Additionally, if the factual record is unclear as to the method of conducting the straight-leg raising tests, and if this issue is potentially determinative within the ALJ's analysis on remand, the ALJ may not simply speculate that the testing was insufficient, as suggested by the Commissioner. Instead, the ALJ should contact the treating physician for clarification. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also Hambleton v. Comm'r Soc. Sec.*, Civ. No. SAG-15-2897, 2016 WL 4921422, at *2 (D. Md. Sep. 15, 2016). The Court also declines Plaintiff's invitation to reverse the decision of the SSA in lieu of remanding the case for further proceedings. *See Radford*, 734 F.3d at 295 (noting that it is not the province of the district court to weigh conflicting evidence and concluding remand was appropriate).

Finally, because the case is being remanded on other grounds, I need not address Plaintiff's arguments concerning the ALJ's alleged error in failing to comply with 20 C.F.R. § 404.1520a, or that the SSA did not meet its burden at step five because the ALJ failed to resolve an apparent conflict. On remand, the ALJ can consider these arguments and make any required adjustments to the opinion.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 16), is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED in part. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge